The next case today is Jose Pineda et al. v. Skinner Services, Inc. et al. Appeal number 20-1097 and Jose Pineda et al. and Skinner Services et al. Appeal number 20-11441. Attorney Cole, please introduce yourself for the record and proceed with your argument. May it please the court, Michael Cole for the defendant appellants. We've already identified Skinner Services, Inc. and the individual defendants, David and Thomas Skinner, Sandra Santos, and Albert Denise. Your honors, panel, may I have and reserve two minutes for rebuttal? Yes, you may. Okay. Proceed. Good morning, your honors. By way of a brief introduction, this appeal arises out of a wage and hour class and collective FLSA claims. The core allegations in the lower court are that Skinner Services, Inc., who I will just refer to, your honors, as Skinner Demolition or Skinner Demo, it's a demo company, had a company policy of not compensating their demo team members for travel time, which is called the reporting class, and there is also a uniform class, as the plaintiffs allege that uniform deductions were improperly taken from their paychecks. Three years into the litigation, the plaintiffs filed a motion, preliminary injunction. The main concern expressed by the plaintiffs was that there would maybe no assets to cover a potential judgment. There was an abbreviated hearing on December 17, 2019, at the end of an over two-hour summary judgment hearing in front of the district court, and on December 23, the district court allowed preliminary injunction order. There's three main paragraphs to the preliminary injunction order. Mr. Cole, you're in the court of appeals. You may assume we know the history of the case. Could you please get to your argument? You have a limited amount of time. Yes, your honor. Understood, your honor. So, the main and the first and what I would say the strongest argument here on appeal is that the district court's order lacks any specific or explicit findings of fact that would support the issuance of the preliminary injunction. Rule 52A requires specific findings of fact and conclusions of law, so that the appellate courts can test whether or not the legal analysis is correct and apt. And the district court's order merely contains a recitation of the traditional four-part injunction test, and then it has a general reference to, on pages two and three in the addendum, citing to testimonial and documentary evidence submitted in this case to date. There's nothing identified or pointing to anything in the preliminary injunction record or the summary judgment record or the over 400 filings as to what the judge relied on in finding irreparable harm, likelihood of success on the merits, whether or not the balance of the harms tilted one way or another, or whether there was considerations of public interest. Instead, there's just a general reference, and it makes it impossible to tell what the judge relied on and whether he made a solid decision of law. And so there's not a single fact that points to success on the merits in either of the reporting class or FLSA class. There's no findings that the plaintiffs could be irreparably harmed, and again, that's important because the general argument was that we may win and not recover our risk, and so there must have been some other analysis by the judge to use that to then make a leap to irreparable harm. There was also very specific, hotly contested issues in this case regarding instructions to the employees. Even the ownership of the company was contested, so if we're going to make a decision to enter an injunction to maintain status quo or martial assets, the court was required to at least make some kind of initial credibility determination and analyze the affidavits, and your honors, there were financial affidavits submitted. One of them was submitted by my clients in Appendix 2725 by one of the four minutes of the companies. So even if all the other arguments failed, there was concern by the one of which was assigned significant assets that were then sold to another company. So there was evidence that assets that could have been available to satisfy a possible judgment were being disposed of, and in addition to that, there were the other entities that were created, and I the court did not have to credit that, did it? No, your honor, you're correct, and I would have assumed that in the order, that would have been one of the findings of fact, that there was a sister company Skinner Disposal, and that that sister company was sold, and that that would give rise to concern by the court and the plaintiffs, that there would be some irreparable harm, and so that was before the court. This judge had presided over numerous hearings involving these parties, hadn't it? Yes, that's correct, your honor. Three years of litigation, numerous filings, but there's nothing in the actual order that points to that concern. I understand what you're saying. I would have expected to see it there so that we could look at it and say, this is the finding of fact, at least one of them that supports the judge's decision. Well, was there any dispute factually that assets were being moved from one party to another? As far as the one party to another, there's a dispute whether or not those assets of Skinner Disposal, a separate company, were assets of Skinner Services, so as you couch the question that way, your honor, yes, there was a dispute whether or not that would have been the pool of assets. Are you saying that Skinner Disposal was not a new company and that those assets didn't previously belong to Skinner Services? That's exactly what I'm saying, your honor. What happened is, and for a timeline, I would say in the middle of the class period, Skinner, the owners and the employees were not the same. The revenue stream was not the same, and it's separate and apart from the millions of dollars of annual revenue the demo company makes every year, which would support and pay for any potential judgment. Let me ask you a practical question. How does this injunction harm your client, given what you've said about ability to pay and the seven million a year in revenues and the limitations that the court put in the injunction? It's not clear from the record how this harms your client. Well, Justice Kayotta, I would say that it harms the individual defendants the most because it mandates them to make accountings to the plaintiffs and to also notify the plaintiffs of any transfers of $25,000 or more. So it puts their personal finances and their personal life squarely in the crosshairs of the plaintiffs and plaintiffs counsel. It's been an extremely contentious case. I will submit, your honor, that if this injunction is upheld, at least paragraphs 2a and b, there will be numerous motions filed any time one of the plaintiffs wants to do anything financially and any time a large bill needs to be paid by the company. What it does is it makes the district court and regrettably, Judge Saylor, the arbiter of how the business is going to be run going forward. I want to pursue that, if you don't mind. I had the same question Judge Kayotta had. Your answer seems to be, well, it doesn't harm the corporate defendants, but it might act as a restriction on the individual defendants' transfer of assets. Don't they all derive their income from the corporate defendants here? I don't believe that all of them do. It would include, your honor, commingled assets with a wife and a husband, for example. Well, then can't you, if you believe that in practice this is overbroad, although facially not overbroad, go back and ask the district court for some modifications? There are very good reasons to do accountings here, and there are very good reasons to impose some restrictions on transfer of assets. So, I'm still having trouble seeing what the real harm is to anyone here. I think, I guess, your honor, we could ask for a remand of the order to be clarified. Oh, no, no, no, no, no. You chose to appeal from this. We will decide your appeal. What you do in the district court thereafter is your choice. So, to answer your question, your honor, we could procedurally have moved to dissolve or amend the injunction. I chose to come here to the appellate court. There's numerous issues that I didn't get to. There's issues of jurisdiction that go back. Okay, okay, you've reserved two minutes. Thank you, your honor. I had, I wanted to come back to a question I asked at the beginning. My notes show that Skinner sold off a portion of Skinner Demo through Skinner Disposal for $3.4 million or so. Was there any dispute about that? Your honor, if you're referring to the sale to JetAway, I believe, there's no dispute with that. Okay, so if you have in the middle of a lawsuit transfer of a large amount of assets going out of Fendon's pocket, most plaintiffs I know would get a little concerned that there are some improper transfers going. Why wouldn't the court be able to do something that in a nuanced way protects the plaintiffs if those transfers are improper? Well, I would submit, your honor, that the court did in paragraph three. They froze $1.425 million in assets in an attachment which is sufficient and which we believe, if there were findings of fact in the order, would survive under the attachment laws, your honor. So the rest is unnecessary, overbearing, and overbroad. But just to be clear, you're not contending that under Rules of Civil Procedure 64 that a state attachment procedure is not available to the plaintiffs? No, your honor. I suggest if it was a straight attachment... Or prejudgment attachment. Yeah, that Rule 64 would allow that, and as I read Rule 64 and as the Charles Bank equity case says, Rule 64 is really an in-rem type of relief and an attachment of a specific amount of goods is an in-rem remedy, and yes, I think that would be fine if the district court did that by the equity jurisdiction in light of Group O and all the arguments we've made. Yes, your honor. Well, did the court already do that? They did and we're not appealing that section even though we find it in the case of Group O and all the arguments we've made in light of findings, we can't appeal that interlocutorily. We have to wait till the final judgment, your honor. True. Okay, thank you. We'll hear you on rebuttal. Thank you, your honor. Attorney Cole, please mute your audio and video. Attorney Groner, please unmute your audio and video, introduce yourself, and proceed with your argument. Good morning, your honors. My name is Plaintiff Apelles. I'm going to dive right into the question of the findings of fact and rulings of law that Attorney Cole had discussed at length. I want to, and then this was an issue that Judge Kayada was getting at, I wanted to clarify what the record shows about Skinner Disposal. Skinner Disposal was created after this case started. There was no evidence that it was anything but a spinoff of Skinner Demolition. I have not heard the defendant cite to anything in the record there and I was surprised to hear a claim that that was not true. As far as the record shows, it's undisputed that it was a spinoff of Skinner Demolition. Counselor, I understood his answer to be that it was a spinoff, but it was a completely new business with a new revenue stream. So, I thought that was the way he was trying to differentiate. I mean, that is not something that was ever advanced in this case before today, to my knowledge. What I understood the defendant's argument to this point to be was that they thought that it was prudent, this is their argument, not what I'm agreeing with, to create a new business because this portion of their business was expanding. That's what they advanced as the reason for this. We contested that was what was going on, but that's what I understood him to be saying. Not that they didn't have dumpsters before this, for instance. They, at the very least, needed them as part of their own business. The record is clear that the major client throughout this period of Skinner Disposal was Skinner Demolition. It wasn't third parties. They would continue to provide the service they had previously provided internally through this new company. I would also correct the record. My brother counsel said that there were new employees for Skinner Disposal, but the record shows that except for individual defendants Thomas Skinner and Sandro Santos, all employees of the company were quote-unquote borrowed from Skinner Demolition. It was not a separate workforce. Let me ask you about Mr. Cole's point regarding the attachment. As I understand the argument, the argument is this. The court issued an attachment that should provide you with adequate security for your judgment should you obtain one. There's no factual finding. There's no math. There's no anything that says that that attachment was either insufficient or by how much it was insufficient. Therefore, how do we tell if the injunction on top of that was appropriately calculated? I think that's the argument I just heard. Yes, sir. I'm sorry. Your Honor, what I would say to that is that I don't think that the two things. One, I don't think that the injunction is on top of the attachment. I think that they are covalent. So, the degree that the physical assets of attached in the attachment order are sufficient to satisfy judgment, then the non-dispersal order doesn't address anything else. No, no, no. You're missing the point. Let's assume by trustee process they froze a bank account of $2 million. I don't think you'd be entitled to any injunction then because you'd have the attachment that would provide full security. I think that's what they're saying is the attachment provides full security or at the very least, there are no factual findings that allow us to determine that the court did or did not find that the attachment itself was insufficient. Well, Your Honor, that's a new argument that opposing counsel is advancing for the first time during this whole argument. So, I would argue that it's waived, but the attachment goes solely to physical assets. So, we asked for a trustee process attachment and that was not granted because it would freeze the assets and the non-dispersal injunction specifically doesn't freeze assets. It doesn't seize assets. It allows them to continue in the ordinary course of business and it's not limited to physical assets. So, to the degree that the physical assets are insufficient to satisfy the judgment, it has broader reach. But that's the question that Judge Caglioti keeps trying to get at. Is the attachment of the physical assets sufficient to satisfy any potential judgment? I'll tell you, Your Honor, we don't know because defendants have steadfastly refused to provide any information about their financial standing besides self-serving affidavits. We were left to guess. We requested repeatedly in discovery and they've never argued that they had $1.4 million in physical assets. That's not something that they have ever put before the court. Five minutes. So, what I hear you saying is there's a reason the district court didn't make specific findings comparing the adequacy of the attachment to the injunction because prior to 10 minutes ago, the defendant never argued to the district court that, hey, the attachment is enough. This is duplicative or at least largely duplicative. Yes, Your Honor, and I heard and maybe I misheard him but it sounded to me like defendant counsel suggested that other than the lack of findings of fact, the attachment was okay which is a new perspective and one we agree with but a new perspective on appeal. You said it wasn't appealable. I'm not sure if he's saying it's okay. I may have misheard him then. I thought that he said that had there been findings of fact to be acceptable but the record says what it says. Mr. Groener, it strikes me that physical assets of a demolition company tend to diminish in value over time with use and that let's assume this lawsuit goes on for another year perhaps and absent some representation from defendant that the resale value a year from now of depreciating assets is more than sufficient to cover the amount that you say will be owing. In the absence of that and in the face of this being a new argument, it's a little difficult to see how there was an abuse of discretion here. I absolutely agree your honor and a piece I would add to this that I think is important in the consideration of the court about whether there are assets and what types of assets there are to satisfy it is the concrete information we have is at the same time as $3.4 million sales happening and after two of the individual defendants including Tom Skinner received $2 million from the sale. This is undisputed. They reported to the court they could not pay a $46,000 amount into escrow based on the finding of contempt of them. So they got $2 million going in and Tom Skinner was one of the parties found in contempt that he couldn't pay $46,000 to the court. Very clear to us that there's a reason to be concerned about the ability to pay here and not only that but the dispersal of assets. They initially said that they needed two months to pay it. What was paid before that, that was represented to the court. I think your honors, the broader point here was that the record, the judge's prior rulings are sufficed to have this court have a sense of what the basis of the judge's order was. I think if it is all right with your honors, I'd like to move on to the questions of jurisdiction in this case. Yes, go ahead. So your honors, the district court explicitly entered the injunction in this matter pursuant to Federal Rules of Civil Procedure 64 based on the ability of Massachusetts courts to form state to enter such injunctions. The defendants contended below that Grupo Mexicano, which limited the general federal equity powers of the courts, prevented such an injunction from entering. But Grupo Mexicano clearly leaves open Rule 64. This court has previously indicated and many sister circuits have previously indicated that pre-judgment methods of securing assets from state courts are still available. Mr. Gromer, the more significant of the arguments that they make is that under state law, you got more than state law would have afforded you. So could you talk about that, please? Yes, your honor. I'd start by briefly noting that that argument was never raised before the appeal, so we contend it's waived. And we also believe it's clear that it is a waivable argument from cases we cited in our brief. Counsel, that's time. Would you like me to continue, your honor? Finish up your answer. Yes, please. On the substance of it, Massachusetts courts have entered such non-dispersal orders for decades, going back to, at the very least, the RGV Hall appellate case. No appellate court has ever ruled in Massachusetts that such non-dispersal orders were beyond the equity powers of the Massachusetts courts. The sole item cited by the defendants to support this is a series of opinions by a single trial court judge that suggests that because these non-dispersal orders are akin to a creditor's bill, they are only available post-judgment, like a creditor's bill. And there are several pieces of that that are leaps of logic. The first is that creditor's bills only apply to items that are not reachable upon execution. Items that are held in the hands of a third party, typically, or, for instance, in the Cavati Supreme Judicial Court case, where there were equitable interests in real property. And that's not what we're talking about here. We're trying to freeze the assets and the possession of the defendants. Moreover, the leap from Grupo Mexicano's holding to the same applying to state law is never explained, either in that judge's opinions or in the defendant's briefing. Simply put, the Grupo Mexicano is an in-depth examination of the scope of federal equity powers under the Judiciary Act of 1789. There was a strong disagreement between the majority and the dissent regarding the scope of those powers. And there's no argument of where the equity powers of the Massachusetts courts come from, whether they're subject to the same limitations as federal powers, and whether if this is not something that was previously allowed in scope. So, to the degree... Thank you. Thank you, Your Honor. Thank you, counsel. Attorney Groen, please mute your audio and video. Attorney Cole? Yes. Please unmute your audio and video and proceed with your two minutes of rebuttal. In rebuttal, Your Honor, I will agree with my brother that the Grupo Mexicano argument is a case of first impression in the First Circuit and in Massachusetts. There's no bright-line rule, and we believe that I'll call it the Judge Salinger rule is the better bright-line rule, and he says in the inter-aisle opinion that the Supreme Judicial Court has made clear that the same limitations on equity jurisdiction discussed in Grupo Mexicano also apply under Massachusetts law. Now, we didn't make the specific creditor's bill detailed argument below, but we do believe that we preserve the Grupo Mexicano argument in the motion for reconsideration. That is an offshoot, and my understanding and my argument is that the equity jurisdiction of the courts is very similar to Article III jurisdiction, which can't be waived. And if you look at... And Mr. Cole, you make two different Grupo Mexicano arguments. The first one is plainly wrong because of the Rule 64 powers of the federal court. The second one, which you've trotted out here, is that the limitations as in Grupo Mexicano. And for that, you cite one judge. Your opponent cites a number of cases approving exactly what happened here. So, moving back, are you making a... You made that argument, you say, for the first time in a motion for reconsideration? Yes, Your Honor. That was the Grupo Mexicano. Okay. And you did not make that argument? That's correct, Your Honor, and we argued that it's... Okay. And Justice Ginsburg, in her consent, in her impartial dissent in Grupo Mexicano, says, Judiciary Act of 1789 gave lower courts jurisdiction over all suits and equity. That's... Counsel, that's time. And just one last point. Okay, thank you. Thank you, Your Honor. Yes, 30 seconds. Just to address, we didn't... Go ahead. ...do argument. Justice Coyota asked me the practicalities of the attachment versus provisions one and two. So, I answered the question that there is security with the attachment. That's not a new argument, just to make that clear. Thank you, Your Honor. So, I rest on the brief. We'll look at the record. Thank you. Thank you. Okay. Thank you. That concludes argument. In this case, Cole and Attorney Groener, please disconnect from the hearing at this time.